721 A.2d 360

**MARS AREA SCHOOL DISTRICT, Appellant,**

v.

**UNITED PRESBYTERIAN WOMEN'S ASSOCIATION OF NORTH AMERICA, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Dec. 22, 1998.

Thomas W. King, Thomas F. Marshall, for Mars School Dist.

Norman D. Jaffe, Butler, for UPWA of North America.

Julie M. Graham, Butler, for Butler County.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of Commonwealth Court which affirmed an order of the Court of Common Pleas of Butler County. The court of common pleas, reversing a determination by the Board of Assessment Appeals of Butler County, held that the United Presbyterian Women's Association of North America (UPWA) is entitled to a charitable exemption from real estate tax for a facility that it owns

and operates, the Mars Home for Youth (MHY). The Mars Area School District, appellant, challenges the facility's tax-exempt status.

MHY is a residential treatment facility for adjudicated dependent and delinquent children. Its exemption from tax is claimed pursuant to the General County Assessment Law, 72 P.S. § 5020–204(a)(3), which provides that "[a]ll ... institutions of learning, benevolence, or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity" shall be exempt from all county, city, borough, town, township, road, poor, and school taxes. This exemption was enacted pursuant to a provision of the Pennsylvania Constitution which gives the legislature power to exempt from taxation real property used by "[i]nstitutions of *purely public charity* ...." Pa. Const. art. VIII, § 2(a)(v) (emphasis added). At issue in this appeal is whether the constitutional prerequisite of being a "purely public charity" has been met so that the statutory exemption can be claimed.

In *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*), we set forth a test that determines whether an entity constitutes a purely public charity. The test requires that the entity (1) advance a charitable purpose; (2) donate or render gratuitously a substantial portion of its services; (3) benefit a substantial and indefinite class of persons who are legitimate subjects of charity; (4) relieve the government of some of its burden; and (5) operate entirely free from private profit motive. *Id.* at 21–22, 487 A.2d at 1317. Whether an institution is one of purely public charity is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or lack of supporting evidence. *G.D.L. Plaza v. Council Rock School District*, 515 Pa. 54, 59, 526 A.2d 1173, 1175 (1987). Here, the record amply supports the trial court's determination that UPWA is a purely public charity entitled to exemption from tax for its MHY property.

The sole issue in this appeal is whether UPWA is in compliance with element four of the *HUP* test with respect to MHY, to wit, whether MHY relieves the government of some of its burden. No other issues have been briefed for our review.

Necessary to the application of element four of the *HUP* test is an understanding of the nature and functions of MHY. MHY is owned and operated by UPWA, a federally tax-exempt, non-profit, charitable organization that has since the late 1800s provided benefits to needy children. In the 1920s, UPWA acquired a tract of land in Butler County, and approximately seventy-three acres of the tract are presently used to operate MHY. As a residential treatment facility for delinquent and dependent youths, MHY offers a variety of programs for their supervision and treatment. Approximately fifty-four children, ranging in age from nine to seventeen, are in residence there at any given time. Facilities include an administration building, housing units, dining hall, library, recreation center, outdoor play areas,* and various support buildings.

MHY provides twenty-four hours a day of supervised living arrangements for youths who have chronic problems. Its treatment programs include instruction in living skills, counseling in educational and vocational opportunities, therapies for emotional and social development problems, and psychiatric and psychological services for individual and family therapy. Also provided are group therapies dealing with a variety of other issues, including sexual abuse, drug and alcohol abuse, eating disorders, etc.

In addition, MHY offers special educational services such as individual tutoring and emotional support classrooms. Enrollment in the Mars Area School District is also provided. Some of the children who reside at MHY eventually receive college scholarships from UPWA.

---

* The recreational areas are used not only by children residing at MHY but also by various community groups, and UPWA levies no charge for their use.

MHY accepts into its care only children who have been adjudicated delinquent or dependent. The children come from ten counties in western Pennsylvania. Per diem payments are received for each child from the referring county. Services provided are not, therefore, wholly gratuitous, since part of the cost is covered by county payments. Aside from per diem fees from the counties, UPWA obtains funds to operate MHY from donations, endowment income, and to a minor extent from the federal school lunch program. Nevertheless, MHY has operated at a deficit since 1985. Of the yearly operating expenses in the period from 1985 until 1994, approximately 24%, on average, have been covered gratuitously by MHY. The actual percentage has ranged from a low of 3.7% in 1994 to a high of 39.3% in 1987. Throughout this period higher fees received from the counties have gradually reduced the operating deficits charged to the institution, but there has never been a time when fee revenues equaled or exceeded operating expenses. The foregoing figures grossly under-state, however, the extent of the contribution made by UPWA in that UPWA donates the premises rent free for MHY's use. Although the record does not reveal the dollar value of this contribution, it is clearly a major factor in MHY's operation. Thus, UPWA shoulders not only the aforementioned operating deficits but all of the depreciation expenses as well. In addition, from the late 1980s to the middle 1990s, UPWA used more than $2.5 million in donated funds to make capital improvements to facilities at MHY.

In short, the situation is not one where county payments cover the full cost of the services provided, as would normally be the case if the county had simply hired an independent contractor to provide the services in question. See *Community Service Foundation v. Bucks County Bd. of Assessment and Revision of Taxes*, 672 A.2d 373, 376 (Pa.Cmwlth.1996) (entities that perform governmental services as independent contractors without absorbing a substantial portion of the cost of the services do not qualify as purely public charities since they do not relieve the government of its burden), appeal denied, 546 Pa. 696, 687 A.2d 379 (1996). Here, the costs

incurred by government would be much greater were it necessary for counties to provide the grounds and facilities, and incur the operating deficits and depreciation expenses, rather than simply pay the existing per diem fees per child.

The fact that there are per diem fees received from the counties does not negate the institution's charitable status. As this court stated in *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 487, 640 A.2d 380, 385 (1994),

> The *HUP* test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.

Inasmuch as MHY bears the costs for a substantial portion of its facilities and services, it relieves the government of a burden that would otherwise befall it.

That the full burden of providing facilities and services for the care of children who have been adjudicated dependent or delinquent would rest on government, were it not for institutions such as MHY, is undisputed. The Commonwealth has a statutory duty to provide for the care of such children. Juvenile Act, 42 Pa.C.S. § 6301 *et seq.;* Public Welfare Code, 62 P.S. §§ 704.1, 704.2.

The record amply supports, therefore, the trial court's finding that UPWA's exemption from tax on the property of MHY is in compliance with element four of the *HUP* test. The Commonwealth Court properly affirmed.

Order affirmed.

Justice NIGRO files a concurring opinion.

NIGRO, Justice, concurring.

It is refreshing to see a tax exemption afforded to an entity that satisfies the traditional definition of a charity and donates for the benefit of the general public. *Compare City of Wash-*

*ington v. Bd. of Assessment Appeals,* 550 Pa. 175, 704 A.2d 120 (Pa.1997)(private liberal arts college is a charity entitled to a tax exemption); *Unionville–Chadds Ford School Dist. v. Chester County Bd. of Assessment Appeals,* 552 Pa. 212, 714 A.2d 397 (Pa.1998)(private horticultural facility is a charity entitled to a tax exemption). Thus, I join the opinion of the majority.